*Day, C. J.
The question presented for our consideration in this case was raised on demurrer to the original petition, and was substantially this: Was the legacy to Frederick Worth, the •defendant in error, a charge on the land devised to the widow for life, and, after her death, to Philip Worth and his heirs?
The legacy is not expressly charged upon the land, nor is it specified in the will out of what fund it is to be paid, or who is to pay it. For aught that appears in the will, or in the averments contained in the petition, the testator had other property, both real and per *522 sonal, not mentioned in the will, sufficient to pay the pecuniary legacies; for it is noticeable that a single piece of land only was devised, and only the personal property thereon was bequeathed to the widow and Philip Worth. Without an averment in the petition that the property given to them was the entire estate of the testator, it might well be held that the legacies were not a charge-upon the land specifically devised by this will, and the court might therefore properly sustain a demurrer to the petition.
But we do not think it necessary to place the case upon that ground alone. Let it be assumed that the testator had no other' property mentioned in the will; how, then, would the case stand?
The legacy in question was a, general pecuniary legacy, without any provision in the will by whom, or out of what fund, it was to' be paid. It is well settled that, in such cases, the personal estate is the primaiy fund out of which to pay the legacy.
In Harris v. Fry, 7 Paige, 421, it is said: “The personal estate is the primary fund for the payment of debts and legacies. If the testator, therefore, gives a legacy without specifying who shall pay it, or out of what fund it shall be paid, the legal presumption is-that he intended it should be paid out of his personal estate only; and if that is not sufficient the legacy fails.”
While it is entirely conjectural how the testator intended that his pecuniary legacies should be paid, it is, perhaps, fairly inferable from the will that he intended they should be paid out of the personal property. The will was executed in ^October, 1853; and it would seem he anticipated that his decease was near at hand,, for he provides that his legacies should be paid at intervals of three years; the first in 1856, the second in 1859, and that to Frederick in 1862. It would seem from the record that his wife is still living, and the testator, doubtless, supposed that she would survive-him, until all the legacies would become due and be paid; and for that reason, perhaps, neither appointed an executor nor made any other provision for their payment, but left the legacies to be paid, as he did his debts, by his widow, out of the property he placed in her hands. This view is strengthened by the fact that, at the death of his wife, he gave to Philip the farm unconditionally, together with “ such part of the personal property, or the proceeds thereof, as may then remain unconsumed and unexpended,” as if he supposed at that time all the debts and legacies would be paid.
But however this may be, it is clear that a general legacy can *523 not be charged upon a specific devise of land, unless it be made to appear clearly from the will that such was the intention of the testator.
“But where the intention to subject the real estate to legacies is merely probable or conjectural, and there are no expressions of charge, except such as are capable of being otherwise satisfied, a court of equity will not act upon that conjecture or private persuasion, to affect the real estate with the payment of the legacies.” 1 Rop. Leg. *682.
In Lupton v. Lupton, 2 Johns. Ch. 614, the chancellor states the case, and the principle on which it was decided, as follows: “ The testator bequeathed the sum of £500 to each of the plaintiffs, when they attain the age of twenty-one, and a like sum to each of them when they attain the age of twenty-five.....The only part of the will that gives color to the construction that the legacies were intended to be a charge upon the land, is the clause which gives the residuary estate to the defendants .... in these words:
“ ‘ I give, devise, and bequeath, etc., all the rest, residue, and remainder of my real and personal estate, not hereinbefore already devised or bequeathed.’
*“ This clause does not appear to me to afford evidence of an intention to charge the land with these pecuniary legacies.
“ The real estate is not, as of course, charged with the payment of legacies. It is never charged unless the testator intended it should be, and that intention must be either expressly declared, or fairly and satisfactorily inferred from the language and dispositions of the will. This general rule does not seem to admit of dispute.”
The same principle has been recognized by this court in repeated cases. In Clyde v. Simpson (4 Ohio St. 445), it was said: “ There may be much force in ascribing to a testator the intention to pay his debts before he gives away any of his property — of being just before he is generous; but, as between the mere objects of his bounty, whore he has given a pecuniary legacy, resting upon and payable from the personal fund, to one, and devised real estate to another, and the personal fund proves insufficient, there can be no reason for disappointing the devisee rather than the legatee, or for shifting the loss from him upon whom the law casts it, upon one that the law does not affect, until it is made unmistakably to appear that the testator so intended. Without such clear manifestation of in *524 tention, there is great danger of interfering with his wishes; and to derive it by implication, the language of the will ought to be so •explicit as to leave no doubt in the mind of the court that the testator actually contemplated such a contingency, and intended to provide against it.”
The question presented in the case before us may be easily determined upon the principles settled in the foregoing cases.
If the testator has not indicated an intention that the legacies should be paid otherwise than by a resort to the land, it is very clear that he has not expressly charged the land with their payment, nor has he used any language in the will from which it can be implied that he intended the legacies should be paid out of the land.
It is unnecessary to pursue the case further; but we cite the case of Reynolds v. Reynolds (16 N. Y. 257), decided by the New York court of appeals, which is so nearly in point that we deem it con-elusive of this case. The judge, in delivering *the opinion in the case, says : “ In this case the testator, by his will, gives a legacy of $1,200 to this son, the plaintiff, and several other legacies to other relatives, without specifying how, by whom, or from what fund they shall be paid, except that they are to be paid within one year after his decease; and then, after giving to his wife the use, during life, of his furniture and of two cows, he, in terms, bequeaths and devises to his two sons, the defendants, all and singular his real and personal estate, to be equally divided between them, and appoints them his executors. The legacies- are not directed to be first paid, and the devise and bequests to the executors do not purport to be of the remainder of the estate. In short, there is nothing in the will indicating an intention that the real estate should be charged.” It was accordingly held in the case that the legacy could not be charged upon the real estate, and that so much thereof as could not be paid out of the personalty, 'must abate.
The case before us is a much clearer one for the application of the principle; for the devisees of the real estate were not in this case, as in that, expressly appointed executors, and thus, in some sense, charged with the payment of the legacies.
Whatever other remedies, if any, the legatees have, we are clearly satisfied that, under this will, they can not resort to the land specifically devised to others.
It follows that the court of common pleas properly sustained the *525 demurrer to the petition, and that the district court erred in reversing the judgment of the common pleas. The judgment of the district court must, therefore, be reversed, and that of the common-, pleas affirmed.
White, Weloh, Brinkerhoee, and Scott, JJ., concurred.